IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID LINK                               :

       Plaintiff,

   v.                                    :

BOARD OF EDUCATION OF
KETTERING CITY SCHOOLS,
TOBY HENDERSON, MARTIN           :       Case No. 3:22-CV-295-WHR-CHG
MARK, JIM AMBROSE,
JENNIFER KANE, LORI PARKS,                JUDGE WALTER H. RICE
KEN MILLER, TYLER
ALEXANDER, LIZ JENSEN, JEFF
RENSHAW, and ZACH PICKENS

       Defendants.

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S CORRECTED MOTION TO DISMISS, DOC. #6; MOTION IS SUSTAINED AS TO THE REDUNDANT CLAIMS AGAINST THE INDIVIDUAL BOARD MEMBERS AND THE INDIVIDUAL EMPLOYEES IN THEIR OFFICIAL CAPACITIES, SUSTAINED AS TO COUNTS II–IX AGAINST THE BOARD, OVERRULED AS MOOT AS TO THE CLAIMS AGAINST THE INDIVIDUAL EMPLOYEES ON THE BASIS OF QUALIFIED IMMUNITY, SUSTAINED AS TO COUNTS I AND II AGAINST THE BOARD; PLAINTIFF GRANTED 21 DAYS LEAVE TO REFILE AN AMENDED COMPLAINT AS TO COUNTS I AND II ONLY

---

Plaintiff, David Link[1] ("Link"), filed suit against the Board of Education of

Kettering City Schools ("the Board") and, in their official capacities, each individual

---

[1] The Complaint, Doc. #1, identifies Plaintiff David Link with the honorific "Mx." and includes numerous exhibits where Plaintiff is referenced using pronouns such as "they/their/them." Without

board member—Toby Henderson, Martin Mark, Jim Ambrose, Jennifer Kane, and Lori Parks—as well as specific school district employees—Ken Miller, Tyler Alexander, Liz Jensen, Jeff Renshaw, and Zach Pickens (collectively "Defendants"), asserting claims of violations of First Amendment rights, violations of—and discrimination based on—Title VII and Title IX of the United States Code, and violation of Fourteenth Amendment rights.[2] Defendants filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). Doc. #5. That motion was mooted by a Corrected Motion to Dismiss, Doc. #6, which included a previously omitted exhibit. Link filed a Response to the motion, Doc. #8, and Defendants have filed a Reply. Doc. #9.

## I.  Background and Procedural History

For purposes of ruling on Defendants' corrected motion to dismiss, the factual allegations in the Complaint, Doc. #1, are assumed to be true, and the included attachments referred to by Plaintiff are assumed to be authentic, as well as true.

Link has been an instructor for Kettering City Schools since 2003. Doc. #1-1, PageID #8. Leading up to the present dispute, Link was on an "improvement plan for performance and classroom management issues," which required frequent

---

addressing any substantive claims that may be involved with such honorifics and pronouns, for the sake of clarity, the Court will refer to Plaintiff as "he/his/him."

[2] This Court's jurisdiction is based on alleged civil rights violations and federal questions "arising under" the Constitution or laws of the United States. 28 U.S.C. §§ 1331, 1343(3).

2

meetings with his then-supervisor, Elizabeth Jensen ("Jensen"). The issues included "staff complaints or counseling/disciplinary situations." Doc. #1-4, PageID #21. During several of those meetings, which occurred prior to Link being reassigned to the Kettering Alternative Program ("KAP"), Jensen made direct statements to him about his behavior in the workplace that were eventually cited in Link's formal Title IX complaint. Doc. #1-3. These statements included "you're different from other teachers," "walk in hallways with your head always facing forward," other teachers "don't want to speak to you, they're only trying to be nice," and "you should resign." *Id.*, PageID #11. Leading up to the start of the 2021-2022 school year, Link was reassigned to KAP which involved physically relocating to another classroom and getting a new direct supervisor, Jeff Renshaw ("Renshaw"). *Id.*, PageID ##12, 23. In June 2021, Link took a personal trip to Texas to "reflect[] on gender identity," *id.*, PageID #18, but did not come out as transgender and gender non-conforming until later in the school year. *Id.*, PageID #16 ¶63.

In September 2021, an incident occurred where Link made a comment to a female student that resulted in a male student accusing Link of being a pedophile. *Id.*, PageID #23. That same month, Link was directly instructed by Renshaw that student assistants were not allowed in KAP, which Link ignored. *Id.*, PageID ##12–13. When investigating Link's outright violation of KAP policy, Renshaw and another faculty member interviewed Link regarding a female student repeatedly visiting Link alone in his classroom, sometimes with the lights off, and during one

3

instance was "dancing between Link's legs while Link sat in a chair." *Id.*, PageID #24. Link did not deny the incident and requested that the student still be allowed to come to the classroom alone, which Renshaw denied before subsequently giving Link a one-day suspension without pay for his violation. *Id.*, PageID ##12–13, 24. Then, while Link was out in September through early October for both medical reasons and his one-day suspension, Renshaw received further notice of issues involving Link's inappropriate actions and conversations in his classroom. *Id.*, PageID #25. Link was placed on administrative leave. *Id.*, PageID #26.

Soon after being placed on administrative leave, Link was provided with an Ohio Education Association ("OEA") lawyer by his OEA representative, Doc. #1-3, PageID #15, which began a weeks-long back and forth over a resignation agreement Link could potentially sign. *Id.* On November 2, 2021, Link submitted a signed resignation letter and resignation agreement, *id.*, PageID #16, which included "a provision that the agreement was a notice of irrevocable resignation immediately accepted by the Board of Education." *Id.*, PageID #15. After signing the agreement, Link "came out as gender nonconforming and part of the Transgender Nonconforming (TGNC) community." *Id.*, PageID #16. Shortly thereafter, on November 9, 2021, Link revoked his acceptance of that agreement. *Id.*; *see also* Doc. #1-5, PageID #28. Link then "raised over 40 different allegations of sexual discrimination/harassment/retaliation under both Title IX and Title VII." *Id.*, PageID #29; *see also* Doc. #1-3, PageID ##11–16 (outlining Link's Title IX complaint).

4

While the District investigated Link's claims, Link "indicated repeatedly" he was interested in a resolution. Doc. #1-5, PageID #29. The District responded with a proposed agreement that was narrowed to only Link's Title IX and Title VII claims and made no mention of any waiver of age discrimination claims. *Id.* However, Link rejected that offer. *Id.* The Title IX and Title VII investigations both found "no evidence to substantiate [Link was] discriminated [against] or harassed on the basis of [his] sex, gender identity, or sexual orientation," because there was "no evidence that anyone associated with the District knew or had reason to believe that [Link was] transgender, gender non-conforming, or bi-sexual." *Id.* However, the investigations did find "substantial evidence" that Link was "a seriously underperforming, conduct deficient teacher" who had inappropriate conversations with students, "engage[d] in a pattern of malicious compliance in response to correction[,]" and otherwise was the subject of numerous other complaints from students and teachers regarding his conduct and behavior. *Id.*

Before the District began the disciplinary process, Link emailed the District on June 4, 2022, with a settlement offer where all claims would be dismissed in exchange for various benefits. Doc. #1-5, PageID #29. The District accepted the offer and drafted a settlement agreement on June 6, 2022, reflecting the proposed terms, though the agreement "did not contain the revocation language required for a valid release of an age claim," *id.*, PageID #30, because all ongoing discussions between Link and the District had narrowed to "claims focused on being transgender/gender non-conforming; bisexual rather than age." *Id.* After Link

5

requested a few changes, which the District made, he signed and submitted the settlement agreement ("Signed Agreement") and a sabbatical leave application on June 7, 2022, both of which "were accepted by the Board on the same day." *Id.* However, Link attempted to revoke his acceptance on June 11, 2022, claiming the Signed Agreement was invalid under the OWBA requirement that an age claim waiver include an explicit seven-day revocation window. *See id.* The District informed Link—through its counsel—that this requirement was inapplicable as Link had not raised an age discrimination claim. *Id.*

Link brought the present suit *pro se* on October 17, 2022, raising nine claims against the Board and employees of the District, including violation of Link's First Amendment rights and discrimination for statements Link made on or around September 16, 2021 (Count I); violation of Link's First Amendment rights and discrimination based on Link's conversations and allegations during the Title VII and Title IX investigations (Count II); violation of Link's Fourteenth Amendment right to due process and equal protection during the Title VII and Title IX investigations (Count III); discrimination based on sex, gender identity, and sexual orientation (Count IV); complaints under Title IX (Count V); discrimination based on testimonies reported in the Title IX investigative report (Count VI); discrimination by the Board (Count VII); discrimination and violation of rights under OWBPA by failing to allow revocation of the settlement agreement (Count VIII); and violation of Fourteenth Amendment rights by dismissing Link's Title IX complaint (Count IX). Doc. #1, PageID #4–5. Link seeks relief in the form of a declaratory judgment that

6

finds the Signed Agreement is "revocated [sic], void and unenforceable, enforceable [sic] insofar as revocation[3]," *id.*, PageID #6, reinstates Link's employment with backpay, and an order of the Court directing the board to complete all investigations dismissed because of the settlement agreement. *Id.* Defendants filed a Corrected Motion to Dismiss, Doc. #6, on February 13, 2023, Link filed a Response on March 6, 2023, Doc. #8, and Defendants filed a Reply on March 13, 2023.

## II.  Legal Standard

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *Pro se* filings are "to be liberally construed," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle*, 429 U.S. at 106) (internal quotation marks omitted). But that leeway is not unlimited, and "[e]ven a *pro se* pleading must provide the opposing party with notice of the relief sought, and it is

---

[3] Based on Plaintiff's disjointed language, the Court is interpreting the statement as a request to find the Signed Agreement revoked, void, and unenforceable, and to find the only thing about the Signed Agreement that is enforceable is the fact that it was revoked.

not within the purview of the district court to conjure up claims never presented." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not

8

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. Analysis

Link's nine claims, Doc. #1, PageID ##4-5, can be generally organized into four categories: (1) violations of Link's First Amendment rights by employees of the District and members of the Board; (2) a violation of Link's rights to Due Process and Equal Protection under the Fourteenth Amendment related to the Title VII and Title IX investigations; (3) discrimination based on Link's sex, gender, and sexuality; and (4) violation of OWBPA for failing to allow a mandatory seven-day revocation period as a part of the Signed Agreement. Defendants primarily contend that the waiver of claims included in the Signed Agreement released all complaints raised by Link against the Board and its individual members in their official capacities, Doc #6, PageID ##8-9, and the claims against Jensen, Renshaw, Ken Miller, Tyler Alexander, and Zach Pickens, employees of the Board, should be dismissed under qualified immunity. *Id.*, PageID #93-94. Defendants finally

contend that Link's First Amendment claims should be dismissed for failing to state claims upon which relief can be granted. *Id.*, PageID #96-98.

### a. Official Capacity Claims Against Individual Members of the Board and Employees of the Board

Link has sued both the Board and its individual members—Toby Henderson, Martin Mark, Jim Ambrose, Jennifer Kane, and Lori Parks—in their official capacities. Doc. 1, PageID #1. However, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 356 n.4 (6th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also. Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (citing *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013)) ("Where the entity is named as a defendant, an official-capacity claim is redundant.").

Link's Complaint, Doc. #1, PageID #1, also lists Jensen, Renshaw, Ken Miller, Tyler Alexander, and Zach Pickens as defendants; however, no information is provided on whether they are being sued in their individual or official capacities. In his Response, Doc. #8, PageID ##113-14, Link later indicates that he also intended to sue these non-Board member defendants in their official capacities. *See id.* (asking "to keep *all Defendants* listed in their official capacities" while only using the Board of Education as a qualifying description for "the Defendants who are board members"). Taking Link at his word, the Court acknowledges that

10

defendants Jensen, Renshaw, Ken Miller, Tyler Alexander, and Zach Pickens have also been sued in their official capacities, as employees of the Board.

Accordingly, the Court SUSTAINS Defendants' Corrected Motion to Dismiss the redundant claims against the individual Board members Toby Henderson, Martin Mark, Jim Ambrose, Jennifer Kane, and Lori Parks in their official capacities. The Court also dismisses the redundant claims against the individual employees Jensen, Renshaw, Ken Miller, Tyler Alexander, and Zach Pickens in their official capacities.

### b. Claims Waived under the June 7, 2022 Settlement Agreement

Defendants contend that the Signed Agreement, Doc. #1-6, constitutes a full waiver of all claims related to the Title IX and Title VII complaints Link raised with the District. *See* Doc. #6, PageID ##91–94. The Signed Agreement opens with the following:

> This RESIGNATION AGREEMENT AND WAIVER AND RELEASE OF ALL CLAIMS (hereinafter referred to as "Agreement") is made on this 7th day of June 2022 by and between David Link, including heirs, agents, and assigns (hereinafter collectively referred to as "Employee"), and the Kettering City School District Board of Education, including its current and former agents, board members, officers, directors, administrators, employees, ... (hereinafter collectively referred to as "the Board").
>
> WHEREAS, Employee has filed complaints under both Title IX and Title VII; and WHEREAS, complaints have been made against Employee; and WHEREAS the parties desire to resolve all issues related in any way to Employee's employment and separation from employment with the Board.

Doc. #1-6, PageID #33. After detailing the specific financial and sabbatical leave terms tied to Link's departure from the District, as well as a statement about the

11

Board providing LGBTQ+ faculty training for the 2022-2023 school year, the Signed Agreement then states that "Employee shall dismiss Employee's complaints and appeals under both Title IX and Title VII," *id.*, PageID #34, before stating that:

> Employee: (i) agrees that this Agreement serves as notice of Employee's *irrevocable* resignation, which is immediately accepted by the Board effective Mach 1, 2023 ... and (iii) *fully and completely* releases the Board from *any and all claims*, liabilities, promises, agreements, lawsuits.... Employee's release includes *but is not limited to* claims of discrimination and harassment based upon race, national origin, ancestry, disability, religion, marital status, *sexual orientation*, *gender identity*, veteran's status, sex and age. Employee's release *includes* ... all claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*... This *full and complete release* shall also include ... any other claims, which have been, could be or could have been asserted by Employee ... in any forum arising out of or connected with Employee's employment with the Board. *Id.* (emphasis added).

Link argues that the Signed Agreement is invalid due to its failure to include a revocation period as required under OWBPA. Doc. #1, PageID #3. The Supreme Court has held that "[t]he OWBPA governs the effect under federal law of waivers or releases" only for Age Discrimination in Employment Act ("ADEA") claims, because the "statutory command [of the OWBPA] is clear: [a]n employee 'may not waive' *an ADEA claim* unless the waiver or release satisfies the OWBPA's requirements." *Oubre v. Entergy Operations*, 522 U.S. 422, 426–27 (1998). Separately, the Sixth Circuit has held that, even if it doesn't comply with OWBPA, a general release of claims "knowingly and voluntarily made under circumstances not indicating any overreaching or exploitation" is effective for all claims except an ADEA claim. *Halvorson v. BSA*, No. 99-5021, 2000 U.S. App. LEXIS 9648, at *6–7 (6th Cir. May 3, 2000) (citing *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1184

12

(6th Cir. 1997)) (finding that a general release foreclosed ADA, FMLA, and ERISA claims, but left the ADEA claim because it was not compliant with OWBPA).

The Court finds that the Signed Agreement was "knowingly and voluntarily made" and that the surrounding circumstances do not show any overreach or exploitation on the part of the Board. Link had access to an attorney from the earliest stages of his administrative leave in 2021, previously accepted and then successfully revoked a prior settlement agreement, initiated the discussions that resulted in the Signed Agreement at issue, and received the favorable changes to the Signed Agreement he had requested prior to signing it. The Court finds that Link has not "plausibly alleged" any conditions and circumstances surrounding the Signed Agreement that make his general waiver of claims unenforceable.

Link's lone contention that the Signed Agreement is invalid for failing to account for a revocation period under OWBPA is unavailing. On its face, the Signed Agreement purports to be an attempt to resolve Link's "complaints under both Title IX and Title VII," and "all issues related in any way to [Link's] employment and separation from employment with the Board." Doc. #1-6, PageID #33. While the Signed Agreement includes age among the various claims of discrimination or harassment that are being waived, Doc. #1-6, PageID #34, it does not list the ADEA among the many named federal and state statutory claims that are included in the waiver. *Id.* at PageID ##34–35 (containing explicit references to Title VII, The Rehabilitation Act of 1973, the Reconstruction Era Civil Rights Acts, the Americans with Disabilities Act, the Family and Medical Leave

13

Act, the Genetic Information Non-Discrimination Act, and various Ohio statutes). The Signed Agreement concludes with an express statement that "Employee, by signing this Agreement, understands that Employee has released all claims against the Board (as defined in this Agreement), *including but not limited to claims under the [ADEA]*." *Id.*, PageID #36. However, as outlined above, this statement constitutes an invalid waiver of ADEA claims, but does not impact the effect of the general waiver on other claims. *See Halvorson*, 2000 U.S. App. LEXIS 9648, at *6–7. Because the Signed Agreement was not a valid waiver of ADEA claims, as there is no seven-day window to revoke, Link's attempted revocation of the entire agreement fails.

The Complaint, Doc. #1, does not allege that the Defendants violated the ADEA, only that their actions were discriminatory based on Link's gender identity, expression, and sexual orientation or violative of constitutional rights, and that the Signed Agreement was facially invalid under OWBPA for not allowing Link to revoke acceptance. Because Link has not asserted a violation under ADEA, but otherwise knowingly and voluntarily signed the general waiver of all other claims, the fact that the Signed Agreement failed to effectively waive ADEA claims has no impact on the other claims presently before the Court. He is free to file an age discrimination claim under the ADEA if he wishes to do so, as long as said claim complies with the applicable statute of limitations.

Accordingly, the Court SUSTAINS Defendants' Corrected Motion to Dismiss Counts II–IX of the Complaint as to the Board.

14

### c. Qualified Immunity for the Individually Named Non-Board Defendants

As discussed above, Link's claims against the individual named defendants who are not members of the Board—namely Jensen, Renshaw, Ken Miller, Tyler Alexander, and Zach Pickens—were intended as suits against them in their official capacities. *See* Doc. #8, PageID ##113–14. Given that the official capacity claims are dismissed as redundant, the Court OVERRULES as moot Defendants' Corrected Motion to Dismiss Link's claims against the employees of the Board on the basis of qualified immunity.

### d. First Amendment Claims

Defendants finally contend that Link's First Amendment claims fail to state a claim or, alternatively, entitle Defendants to judgment as a matter of law. Doc. #6, PageID ##96–98. In the Complaint, Doc. #1, Link's two claims related to the First Amendment read as follows:

> 1. Claims of violation of First Amendment rights and discrimination against Defendants for actions based on Plaintiff's conversations including, but not limited to, those reported September 16, 2021 by Defendant Zach Pickens (Exhibit 9)
>
> 2. Claims of violation of First Amendment Rights and discrimination against Defendants related to allegations in Title VII and Title IX investigations and all other investigations.

*Id.*, PageID #3. No further information is explicitly provided in the body of the Complaint.

The Court finds that Link's First Amendment claims have failed to provide "a short and plain statement … showing that [he] is entitled to relief." *See* Fed. R.

15

Civ. P. 8(a). Neither claim provides the Defendants with "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007) (quotation omitted). As a threshold matter, neither claim indicates the specific First Amendment right or rights the Defendants allegedly violated. The first claim references "actions [of Defendants] based on Plaintiff's conversations," Doc. #1, PageID #3, as the basis for First Amendment violations; however, no information is given to indicate which of the First Amendment rights was allegedly violated, which of Link's conversations are related to the alleged violation, and what actions of the Defendants constituted the violation. The second claim is even more vague, only asserting "violation of First Amendment rights ... related to allegations in Title VII and Title IX investigations *and all other investigations*." *Id.* (emphasis added). These claims, without more, are mere "labels and conclusions," *Twombly*, 550 U.S. at 555, and since it is "not within the purview of the district court to conjure up claims" that were not adequately presented by a *pro se* plaintiff, *Frengler*, 482 F. App'x at 977, Link's First Amendment claims necessarily fail.

Accordingly, the Court SUSTAINS Defendants' Corrected Motion to Dismiss Plaintiff's Complaint as to Counts I and II, dismissing them without prejudice.

### IV. Conclusion

For the reasons set forth above, the Court SUSTAINS IN PART and OVERRULES IN PART Defendants Corrected Motion to Dismiss. Doc. #6. The motion is SUSTAINED as to the redundant claims against the individual Board

16

members and the individual employees in their official capacities; SUSTAINED as to Counts II–IX against the Board members; OVERRULED as moot as to the claims against the individual employees on the basis of qualified immunity; and SUSTAINED as to Counts I and II against the Board.

The Court's dismissal of Plaintiffs' First Amendment claims, Doc. #1 (claims I and II), is without prejudice to the filing of an Amended Complaint within 21 days of this Decision and Entry, consistent with the strictures of Fed. R. of Civ. P. 11.

Date: September 27, 2023  *Walter H. Rice*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE