IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID LINK :

    Plaintiff,

v. :

BOARD OF EDUCATION OF
KETTERING CITY SCHOOLS,
TOBY HENDERSON, MARTIN
MARK, JIM AMBROSE,
JENNIFER KANE, LORI PARKS,
KEN MILLER, TYLER
ALEXANDER, LIZ JENSEN, JEFF
RENSHAW, and ZACH PICKENS

    Defendants.

:

:

Case No. 3:22-CV-295-WHR-CHG

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION TO DISMISS, DOC. #24, WITH PREJUDICE; JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

The Court's prior order on September 28, 2023, Doc. #10, dismissed all of Plaintiff David Link's[1] ("Link") claims against the Board of Education of Kettering City Schools ("the Board") and the individually named board members and district employees (collectively "Defendants"), but allowed him to refile his First Amendment claims. Link subsequently filed a collection of Amended Complaints and associated

---

[1] The original Complaint, Doc. #1, identifies Plaintiff David Link with the honorific "Mx." and includes numerous exhibits where Plaintiff is referenced using pronouns such as "they/their/them." Additional filings indicate that the Plaintiff refers to himself as "Noki Link" and using the pronouns she/they. See, e.g., Doc. ##11 & 14. For the sake of clarity and consistency with the Court's previous orders, Docs. ##10 & 22, the Court will continue to refer to Plaintiff as "he/his/him."

1

filings asserting First Amendment claims, Docs. ##11, 14, 16–17, which the Board addressed via two Motions to Dismiss. Docs. ##12 & 19. On February 21, 2024, the Court sustained the Board's motions to dismiss and granted Link a seven-day window to file a final amended complaint. Doc. #22. Link timely filed a Final Amended Complaint, Doc. #23,[2] and the Board responded with the instant Motion to Dismiss. Doc. #24. Link did not file a response.

The motion is ripe for review.

## I. Legal Standard

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *Pro se* filings are "to be liberally construed," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle*, 429 U.S. at 106) (internal quotation marks omitted). But that leeway is not unlimited, and "[e]ven a *pro se* pleading must provide the opposing party with notice of the relief sought, and it is not within the purview of the district court to conjure up claims never presented." *Frengler v. Gen. Motors*,

---

[2] This Court's jurisdiction is based on federal questions "arising under" the Constitution or laws of the United States. 28 U.S.C. §§ 1331.

2

482 F. App'x 975, 976-77 (6th Cir. 2012).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions

3

"must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id*. at 679.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II. Analysis

Link's Final Amended Complaint, Doc. #23, has again failed to provide "a short and plain statement . . . showing that [he] is entitled to relief." *See* Fed. R. Civ. P. 8(a). He again attempts to assert a First Amendment claim, *id.* at PageID #215 ("My claim is a First Amendment [r]ights [c]laim, not a Title IX claim for discrimination[.]"), but the factual allegations he lays out do not present sufficient information to provide the Board with fair notice of "the grounds upon which [the claim] rests." *Twombly*, 550 U.S. at 555 (quotation omitted).

Twice during these proceedings, Link has been provided with a roadmap laying out the elements for pleading a violation of his First Amendment right to freedom of speech or expression. *See, e.g.,* Doc. #6 at PageID #97; Doc. #22 at PageID #210 (citations omitted). Despite those provisions, Link has failed to sufficiently plead enough facts to make a prima facie showing on all the required elements of a First Amendment retaliation claim that would nudge the validity of his claim over "the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Even construing

everything within the four corners of his final complaint as true and in the light most favorable to him, *see Handy-Clay,* 695 F.3d at 538, the Court finds no factual evidence specifying what conduct he was engaged in that constituted constitutionally protected activity, nor does it find Link clearly stated what specific actions taken by the Defendants constituted a violation. *See* Doc. #23. Instead, Link has only offered this Court mere legal conclusions. Doc. #23 at PageID ##214–17; *see also Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79.

Throughout the exhibits attached to his final complaint, Link repeatedly stated that he did not come out as transgender, non-conforming to any of the students, faculty, or board members at the District until after he had initially resigned and began settlement negotiations. *See, e.g.,* Doc #23-1 at PageID #220; Doc. #23-3 at PageID #224–25, 227–28; Doc. #23-4 at PageID #230–33, 235, 237–38; Doc. #23-5 at PageID #240–41. This stands in stark contrast to Link's eleventh (11th) allegation, where he states, along with a few additional reasons, that he resigned "because [he] had come out to the school," Doc. #23 at PageID #215, which insinuates that the District knew of his transgender status prior to his initial resignation.

These inconsistencies preclude the Court from finding sufficient factual support for the assertions made by Link in the body of the final complaint. While the Court takes everything in the light most favorable to Link, the inconsistent pleadings make it difficult to form "*reasonable* inferences in favor of the plaintiff" when the plaintiff contradicts himself. *Handy-Clay,* 695 F.3d at 538 (quotation omitted)

5

(emphasis added). Firstly, the Court has already twice considered the Title IX Report and accompanying exhibits and determined that simply attaching and referencing the Title IX report in the body of the complaint does not satisfy the plausible pleading standard. Doc. #10 at PageID ##138–39; Doc. #22 at PageID ##205–09. Thus, Link's present attempt to plead his First Amendment claims by again attaching the report without meaningful expansion is unavailing. *See also Bassett* 528 F.3d at 430. Further, many of the exhibits attached to the final complaint do not apply to, or otherwise help explain, the First Amendment claim Link is raising. *See* Docs. ##23-5, 23-6, 23-7, & 23-8. Instead, these exhibits refer to the Signed Agreement about Link's cessation of employment, which this Court previously found to be a valid waiver of his rights to bring claims regarding his resignation from the District. *See* Doc. #10. Finally, Link's inclusion of Exhibit Eleven (11), Doc. #23 at PageID #216 (citing Doc. #23-11), is irrelevant to his final complaint as the document is a previous filing by the Board addressing Link's Response to the Board's Motion to Dismiss the Second Amended Complaint. Doc. #21 (addressing Doc. #20). Its inclusion in the final complaint provides no factual support to Link's First Amendment claim, and he cannot rely on the Board's legal arguments as proof of an affirmative policy discriminating against him based on his purported transgender identity.[3]

---

[3] The Board previously argued that Link's previous complaint failed to state a claim "because it allege[d] two non-existent First Amendment rights—(1) a right to discuss their public gender and sexual orientation with other teachers; and (2) a right to discuss emotional affairs with students." Doc. #21, PageID #196 (citing Doc. #11, PageID #142). Link now offers this as proof of intent for alleged violation of his First Amendment rights; however, this *post hoc* justification fails outright

Additionally, the body of the Final Complaint does not directly reference more than a few of the attached exhibits. Doc. #23 at PageID ##214–17 (showing references to only Exhibits 3, 4, 9, 10, & 11 within the body of text). But even those limited references are not supported by any discussion or argumentation. The mere inclusion of these exhibits, without explaining how they show the Defendant violated Link's First Amendment rights—or even what alleged speech or protected activity Link purportedly engaged in—is once again "Link's generic attempt[] to ... have the Court construct a valid First Amendment claim on his behalf." Doc. #22 at PageID #209; *see also Bassett* 528 F.3d at 430 (citation omitted) (detailing that exhibits attached to a complaint should only be considered when evaluating a 12(b)(6) motion to dismiss when they are referenced in the body of the complaint and are central to the claim). Thus, Link's Final Amended Complaint fails to satisfy even the basic pleading requirement of providing "a short and plain statement . . . showing that [he] is entitled to relief." *See* Fed. R. Civ. P. 8(a).

### A. The Elements of a First Amendment Retaliation Claim

The Board's Motion to Dismiss, Doc. #24, contends that Link has failed to adequately plead any facts that would both indicate what constitutionally protected activity he engaged in and what action the Board took that violated his First Amendment rights. *Id.* at PageID #258. The Board further argues that Link has only pled legal conclusions and failed to allege sufficient facts supporting each element

---

because it attempts to conflate a legal argument on the sufficiency of his prior and unsubstantiated claims as evidence of official discriminatory policy or action by the Board leading to his termination.

7

to adequately put them on notice of the grounds for the claim so that the Defendants are able to defend themselves. *Id.* at PageID ##258-59.

Link's argument in the Final Amended Complaint is that the Board holds a policy at the school that violates the First Amendment and forced him to resign.[4] Link's sole claim in the Final Amended complaint reads:

> Kettering City Schools, as an entity of the state, enforces a "law" that abridges freedom of expression and association by the Plaintiff, holding a position that the Plaintiff does not have the[] "right to discuss their public gender and sexual orientation with other teachers." The position of the schools resulted in the resignation and [c]onstructive [d]ischarge of the Plaintiff.

Doc. #23 at PageID #216. As the Court observed in a prior order, Doc. #22, the Sixth Circuit elements for establishing a claim of First Amendment retaliation are:

> (1) [H]e or she was engaged in a constitutionally protected activity; (2) the defendant's adverse action caused [him or her] to suffer an injury that would likely chill a person of ordinary firmness from continuing in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of his or her constitutional rights.

---

[4] Link asserts, Doc. #23 at PageID ##215-16 (quoting Doc. #11 at PageID #142), that a legal argument in one of the Board's previous filings is factual proof of a policy that the Board upholds in the District affecting his right to gender expression. Link's argument, by inference, is that said "policy" on gender expression was used by the Board to constructively discharge him from his position. *See generally id.*

However, this argument is baseless for three reasons. First, as discussed *supra, see* n.3, the language quoted from the Board's previous filing was legal argumentation about the sufficiency of Link's previous complaint and not any affirmative assertion of a public policy position. See Doc. #11 at PageID #142 (setting forth arguments on the merits of Link's previous First Amendment claims). Second, Link's naked assertion that one of the Board's legal arguments during these proceedings is affirmative proof of an official policy that led to his termination has no basis in law or fact. Finally, Link cites no other evidence of the Board's purported public policy on gender expression, which makes the assertion conclusory.

8

*Id.* at PageID #210 (citing *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001)). The Court also expounded on how the Sixth Circuit assesses whether something is constitutionally protected activity:

> To demonstrate that he or she was engaging in constitutionally protected speech, a teacher must show that his or her speech touched on matters of public concern, and that his or her "interest in commenting upon matters of public concern...outweigh[s] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Id.* at PageID #210 (quoting *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000)). While teachers retain First Amendment rights when teaching and the government cannot censor a teacher's speech without restriction, *see Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 680 (6th Cir. 2001), the teacher still bears the burden of showing their speech constitutes constitutionally protected activity. *See Leary*, 228 F.3d at 737.

### i. First Element

Regarding the first element, Link neither articulated nor provided factual support for what specific action he took that amounted to a constitutionally protected activity. Despite Link's repeated reference to conversations either involving or about him—mentioned in both the Final Amended Complaint and its attached exhibits—he does not coherently state how any of his alleged conduct amounted to a First Amendment protected activity or provide any factual support to allow the Court to infer any constitutionally protected activity. *See Handy-Clay*, 695 F.3d at 538 (explaining that the Court can make reasonable inferences from the

9

complaint when looking in the light most favorable to the plaintiff). Even if Link did explicitly state what constitutionally protected speech he was engaged in,[5] he failed to provide any factual support to provide the Board with notice of the basis of his claim. *Twombly*, 550 U.S. at 555.

In the Final Amended Complaint, Link contradictorily asserts that he "resigned because of the [Board]'s position that I could not express my gender as myself," while also stating that he "resigned from Kettering City Schools because [he] felt that the investigation into [his] Title IX Complaint made it clear that [he] would be terminated if [he] expressed [his] transgender status to teachers or students." Doc. #23 at PageID #214. While Link asserts that "[he] said on several occasions . . . [he] was afraid to speak about [his] transgender status," *id.*, he provides no factual support for these supposed conversations and the attached Title IX complaint, Doc. #23-3, cites no instances where Link spoke about his transgender status at school or to employees of the Board. Simply stating that "[i]t

---

[5] Link unsuccessfully and incoherently asserts, but never outright expressly states, that the supposed First Amendment protected activity was a conversation—mentioned explicitly within the Final Amended Complaint and attached exhibits—between Link and his former colleagues about an exchange Link had with a barber in Texas regarding their mutual interest in pornography and agreeing to go into the back room with the barber. Doc. #23 at PageID #214-15; Doc #23-4 at PageID #230. However, even if the Court were to take the unreasonable step of construing Link's complaint to make that claim, he still fails to articulate how that speech was protected.

The conversation was brought to Link's supervisor's attention following the incident because his colleague had concerns about Link's wellbeing, as a teacher talking about their personal enjoyment of pornography at school is inappropriate. Doc. #23-9 at PageID #251. Link confirmed himself that he shared this story "with some teachers and former students, without elaborating or mentioning the questioning of [his] gender." Doc #23-4 at PageID #230. Thus, on the face of the Final Complaint, Link has failed to show how this speech was connected to any expression of Link's transgender identity, and therefore a constitutionally protected activity, as he has not included any supporting facts. *See Iqbal*, 556 U.S. at 679 (holding that factual allegations must be pled to support legal conclusions that give rise to an inference that the defendant is liable for the conduct described).

is a matter of public concern because teachers and students and the community are affected," Doc. #23 at PageID #215, without further explanation, is a "label and conclusion" that is a "formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 570. Link left this statement unsupported by any factual allegations that would indicate what constitutionally protected activity he was engaging in. *Iqbal*, 556 U.S. at 679. As such, the first element required of a First Amendment claim has not been plausibly pleaded and necessarily fails here alone, as it does not provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

### ii. Second Element

For the sake of thoroughness, the Court will examine the remaining elements of a First Amendment retaliation claim to determine whether they have been well pleaded.

The second element requires Link to show that "the defendant's adverse action caused [him] to suffer an injury that would likely chill a person of ordinary firmness from continuing in that activity." *Cockrel*, 270 F.3d at 1048. Link alleges that the injury he suffered was a constructive discharge from his employment at the District. Doc. #23 at PageID ##215–16. Thus far in the pleadings, it has not been contested by the Board that Link suffered an injury in this case, as Link became unemployed following the signing of the resignation agreement and had to find subsequent employment. See Doc. #6; see also Doc. #9; see also Doc. #12; see also Doc. #15; see also Doc. #19; see also Doc. #21. While it is not necessary for

11

the Court to determine whether there actually was a constructive discharge, this element is well pled as Link provided sufficient factual allegations to support his assertion that he did suffer an injury in losing his job and having to seek new employment and therefore crosses "the line from conceivable to plausible[.]" *Twombly*, 550 at U.S. 570.

### iii. Third Element

The final element of Link's First Amendment retaliation claim also fails as Link has not provided the Court with supporting factual allegations to show that any action by the Board was "motivated at least in part as a response to the exercise of [Link's] constitutional rights." *Cockrel*, 270 F.3d at 1048. The Board contends that Link failed to provide any facts to show that the Board investigated any conversations or acts that amounted to speech about, or expression of, Link's transgender status before asking Link to resign. Doc. #24 at PageID ##259–60. Link began negotiations with the Board about a resignation agreement in early October of 2021. Doc. #23-3, PageID ##226–28. However, Link did not come out to anyone at the District as transgender or gender nonconforming until December 16, 2021, in an email to Ken Miller. See Doc. #23-4. Additionally, it was not until negotiations in early 2022 that Link requested the Signed Agreement include a provision that the Board implement LGBTQ+ training for their employees, which was the first time Link's other former colleagues became aware of his transgender status. Doc. #23-4 at PageID #233. Before this, there had been no mention of Link's gender or sexual identity to the Board or anyone at the District. *See* Doc. #23 (including attached

12

exhibits). Furthermore, the exhibits attached to the Final Amended Complaint, taken as true, indicate that none of his colleagues or superiors had even suspected that Link may be gender nonconforming prior to Link's resignation. *See, e.g.*, Doc. #23-4, PageID ##231, 233, 235, 237–238.

Link's only argument in the Final Amended Complaint is that the Board's supposedly adverse action was making him feel like "he would be terminated if [he] expressed [his] transgender status to teachers or students," Doc. #23 at PageID #214, which resulted in "a constructive discharge because Plaintiff could not be a gender stereotype." *Id.* at PageID #215. Link's feelings about the circumstances leading to his resignation are insufficient to show that any purportedly adverse action was motivated by an alleged exercise of constitutional rights, as none of his colleagues or the Board knew of Link's transgender status. And, as discussed *supra*, Link has not provided any evidence or arguments to demonstrate that he was engaged in any speech or activity protected by the First Amendment. Therefore, the conversation or conduct explicitly laid out in the body of the Final Amended Complaint or attached exhibits fails to show adverse action by the Board which was motivated by his exercise of constitutionally protected speech. *Cockrel*, 270 F.3d at 1048. Simply put, Link's failure to show that he was engaged in a constitutionally protected activity ultimately shows that the Board's action was not "motivated at least in part as a response to the exercise of [Link's] constitutional rights." *Id.*

## II. Conclusion

For the reasons set forth above, the Court SUSTAINS Defendants' Motion to Dismiss, and Plaintiff's complaint is dismissed with prejudice.

Judgement is to be entered in favor of Defendant and against Plaintiff.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: August 1, 2024

*Walter H. Rice*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE